IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED
FEB 20 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JOHN DOE #1, *et al.*,

    Plaintiffs,

v.                                     Civil Action No. 4:07cv84

LARRY ROBINSON and
VANDISHA BUNCH and
WILLIE A. SMITH, *et al.*,

    Defendants.

## *MEMORANDUM OPINION & ORDER*

This matter is before the Court on Vandisha Bunch and Willie A. Smith's ("Defendants") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below Defendants' Motion for Summary Judgment is GRANTED.

### I. FACTUAL AND PROCEDURAL HISTORY

This consolidated case involves sexual assaults on two minors by their cell mates while incarcerated in the Newport News Juvenile Detention Center ("Secure Detention") operated by the Newport News Department of Juvenile Services ("NNDJS"). The Amended Complaints allege these incidents of sexual assault resulted from denial of Plaintiffs' rights under 42 U.S.C. § 1983 and gross negligence. As against these defendants, Plaintiffs allege that Vandisha Bunch ("Bunch") and Willie A. Smith ("Smith") were grossly negligent in classifying Plaintiffs and their assailants, in making the room assignments that resulted in John Doe #1 being placed with

1

William Roe #1 and John Doe #2 being placed with William Roe #2, and in failing to inquire into the juvenile records of Roe #1 and Roe #2 to determine their propensity for aggressive and deviant behavior.[1]

At the time of the sexual assault on John Doe #1, Bunch was a counselor at Secure Detention and served as a Classification Officer. On the date Doe #1 was brought in, Bunch entered his information in the computer and assigned him to a room. At the time of the sexual assault on John Doe #2, Smith was a Senior Counselor at Secure Detention. Although Smith's job responsibilities included classifying detainees and making room assignments, Smith has no recollection of classifying either John Doe #2 or William Roe #2. NNDJS records indicate, however, that Smith was working on the dates that Doe #2 and Roe #2 were admitted to Secure Detention. (Pls.' Resp. Br. Mot. Summ. J. 7-8.)

In placing detainees in rooms, NNDJS staff are required to follow the established policies. According to Secure Detention's classification plan, rooms were supposed to house only one child except when made necessary by the number of juveniles ordered to be housed by the courts. (Mot. Summ. J. 4.) The policy forbade males and females to occupy the same sleeping quarters. (*Id.*) The policy divided male residents by age and size, assigning "larger" fifteen-year-olds with roommates who were fifteen and older and "smaller" fifteen-year-olds with roommates who were fifteen and younger.[2] (*Id.*) The policy stated that its purpose was "to protect residents from bullying or abuse by other residents." (*Id.*) The written classification

---

[1] Because the allegations involve juvenile detainees, the plaintiffs are referred to as John Doe #1 and John Doe #2 and their respective assailants are referred to as William Roe #1 and William Roe #2.

[2] The term larger referred to males 5'6" or taller and of moderate to husky build.

2

policy also prohibited staff from placing a second resident in the same sleeping room with any resident who had been charged with a violent or sex related offense, who was known to be homosexual, or who had a communicable disease. (*Id.*)

John Doe #1 was a nine-year-old boy who weighed at least 163 pounds when he was ordered into Secure Detention on September 5, 2003. (Mot. Summ. J. 6.) Doe #1 was ordered to Secure Detention as a result of pending charges for Trespassing and Throwing a Missile at an Occupied Vehicle. (*Id.*) William Roe #1 was a fourteen-year-old boy held in Secure Detention on charges of Breaking and Entering a Dwelling House with Intent to Commit Larceny, Assault and Battery or Other Felony and Petit Larceny. (Mot. Summ. J. 7.) John Doe #1 and William Roe #1 shared sleeping quarters on September 9, 2003. On the morning of September 10, 2003, Doe #1 reported to an NNDJS staff member that Roe #1 had sodomized him on the evening of September 9, 2003. (*Id.*) The supervisor on duty contacted the Newport News Police Department, and Doe #1 was transported to a local emergency room for a physical examination. Roe #1 was convicted of sodomy on January 24, 2005. (*Id.*)

At the time he was detained, John Doe #2 was a twelve-year-old boy who weighed 136 pounds and was 5'6" tall. (Mot. Summ. J. 8.) Doe #2 was ordered to Secure Detention on February 23, 2004 as a result of pending charges for Communicating a False Bomb Threat and Destruction of Personal Property. (*Id.*) William Roe #2 was a fifteen-year-old boy held in Secure Detention on a Child in Need of Services ("CHINS") petition.[3] (*Id.*) When he entered Secure Detention, Roe #2 was 5'4" tall and weighed 120 pounds. (*Id.*) On the evening of

---

[3] Roe #2 was transferred from a less secure detention facility to Secure Detention after getting involved in an altercation with his roommate and for leaving the premises without authorization. (Pls.' Resp. Br. Mot. Summ. J. 3-4.)

3

February 28, 2004, Doe #2 reported to an NNDJS staff member that Roe #2 had sexually assaulted him over the past four days, beginning February 25, 2004. (*Id.*) The supervisor on duty contacted the Newport News Police Department, and Doe #2 was transported to a local emergency room for a physical examination. Roe #2 subsequently entered an Alford plea to four counts of sodomy.

Two separate complaints were originally filed in the Circuit Court for the City of Newport News, and were removed to this Court on September 5, 2007. These cases were consolidated for purposes of litigation on September 25, 2007. Pursuant to Rule 15(a)(2) and with the consent of the defendant City of Newport News and the defendant Larry Robinson, Plaintiffs were permitted to amend their Complaints to include additional parties. On March 31, 2008, Plaintiffs submitted Amended Complaints naming Bunch and Smith as additional defendants. Plaintiffs claim that Bunch acted with gross negligence when she assigned Roe #1 to share the room with Doe #1 despite the age and size disparity between the two. Plaintiffs also allege that Bunch failed to inquire into the juvenile record of Roe #2 to determine his propensity for aggression and deviant behavior. (Compl. ¶ 33.) Plaintiffs claim that Smith acted with gross negligence when he assigned Roe #2 to share the room with Doe #2 despite the age and size disparity and evidence of Roe #2's aggressive temperament. Plaintiffs also allege that Smith failed to inquire into the juvenile record of Roe #2 to determine his propensity for aggression and deviant behavior. (Compl. ¶ 37.)

On December 29, 2008, Defendants filed a motion for summary judgment on all claims. Plaintiffs filed their opposition on January 5, 2009, and Defendants replied on January 9, 2009.

...

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiffs have failed to demonstrate the requisite gross negligence necessary for Plaintiffs to prevail. Defendants assert that they are entitled to qualified immunity because their acts were discretionary rather than ministerial and, as such, Defendants contend that gross negligence must be proved in order to establish liability. Plaintiffs, on the other hand, argue that the acts they complain of were ministerial, not discretionary acts to which qualified immunity applies.

Plaintiffs also assert that Defendants' actions support liability under simple negligence and gross negligence theories.

### A. *Qualified Immunity*

In ruling on Defendants' claim of qualified immunity in this context, the Court must first address whether the challenged conduct occurred in the exercise of a discretionary, rather than a ministerial function. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court specifically held that "government officials performing discretionary functions, generally are shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. The defense of qualified immunity may be a basis for summary judgment if there are no material facts in issue. Qualified immunity is an affirmative defense and must be pled by the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court will not impose upon the plaintiff the obligation of anticipating the qualified immunity defense, and "it is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Cowles v. Peterson*, 334 F. Supp. 2d 472, 479 (E.D. Va. 2004) (quoting *Gomez*, 446 U.S. at 640). Defendants have pled qualified immunity as an affirmative defense in this case and so have satisfied this requirement.

Plaintiffs suggest that Bunch's and Smith's acts in question were ministerial, not discretionary; however, the Court agrees with Defendants that Bunch's assignment of John Doe #1 to his cell and Smith's assignment of William Roe #2 to John Doe #2's cell were discretionary. For purposes of the qualified immunity of government officials, a "discretionary" function is one that entails the exercise of at least a modicum of judgment. *See Harlow*, 457 U.S. at 816. "A law [or regulation] that fails to specify the *precise* action that the official must take in

*each* instance creates only discretionary authority." *Davis v. Scherer*, 468 U.S. 183, 196-97 n.14 (1984) (emphasis added).

The rules that purportedly established Defendants' duties in the present case left to Defendants a substantial measure of discretion. Defendants were to classify the detainees by gender, age, and if applicable, size and assign detainees to rooms based on the classification. The only other constraints on room assignments prohibited double-bunking of a resident who had been charged with a violent or sex-related offense, who was known to be homosexual, or who had a communicable disease. Although the regulations set forth requirements that necessitate placement of detainees per their specific classification, once the detainees are classified and found to be eligible for double-bunking, the individual government official must exercise judgment and discretion in determining which detainees to assign to which sleeping quarters.

Here, Plaintiffs do not argue that Defendants improperly classified the detainees, in fact, Plaintiffs concede that Defendants properly followed the NNDJS written policy. Instead, Plaintiffs assert that Defendants failed to inquire into the behavioral history of the assailants and made inappropriate room assignments. This conduct, or lack thereof, goes far and beyond the requirements established by the NNDJS policy, and cannot be deemed ministerial. The Court concludes that the undisputed facts herein establish discretionary conduct for qualified immunity purposes. Therefore, this Court holds that Defendants are entitled to invoke the defense of qualified immunity and may be held liable only for gross negligence.

## B. Gross Negligence

Under Virginia law, the degree of negligence which must be shown to impose liability when qualified immunity applies is elevated from simple to gross negligence. *Colby v. Borden*, 400 S.E.2d 184 (Va. 1991). Because Defendants have claimed qualified immunity from suit, the

Court now must determine whether, in performing the discretionary functions at issue, Defendants actions, or lack thereof, rose to the level of gross negligence. The Supreme Court of Virginia has defined gross negligence as a "degree of negligence" which shows "such indifference to others" as to "constitute[] an utter disregard of prudence amounting to the complete neglect of the safety" of another. *Ferguson v. Ferguson*, 181 S.E.2d 648, 653 (Va. 1971). It must be such a degree of negligence as would shock fair minded people, although it need not constitute willful negligence. *Koffman v. Garnett*, 574 S.E.2d 258, 260 (Va. 2003). The cumulative effect of several acts when taken and considered together under the facts and circumstances of the case may constitute gross negligence. *Ferguson*, 181 S.E.2d at 652. Whether certain behavior constitutes gross negligence is "generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ. *Koffman*, 574 S.E.2d at 260.

Plaintiffs allege that Defendants were grossly negligent in making room assignments by placing Plaintiffs with inappropriate residents under the circumstances. To rise to the level of gross negligence, as would be required for Plaintiffs to maintain their action, Plaintiffs must prove that Defendants' actions were completely void of even the "slightest diligence" or constituted only "scant care." Regarding Bunch, Plaintiffs primarily take issue with the age difference between Doe #1 and his assailant. However, according to the policy, unless Roe #1 had a communicable disease, was previously involved in violent behavior or was known to be homosexual, the pairing of Doe #1, age nine, and Roe #1, age fourteen, was not inappropriate. Additionally, although the policy does not consider size when the detainee is under fifteen years old, Doe #1 and Roe #1 were approximately the same size. Plaintiffs have provided no evidence

to support a finding that Bunch, who performed her duties according to the established policy, acted with only "scant care."

With respect to Smith, Plaintiffs take issue with the age difference between Doe #2 and Roe #2 and Smith's failure to check Roe #2's behavioral history. Again, according to the NNDJS policy, it was not inappropriate to assign Roe #2, a "small" fifteen-year-old[4] with Doe #2, a twelve-year-old of slightly larger size and weight. Although Smith did not check Roe #2's behavioral history when making the cell assignment, Smith did evaluate Roe #2's propensity for aggression based on the charges against Roe #2 and his demeanor upon admission to Secure Detention. Smith's failure to go beyond the policy and inquire into Roe #2's individual history, while still following NNDJS's written guidelines, does not demonstrate action that is void of even the "slightest diligence." Because Defendants were not on notice of any increased threat of sexual violence by the assailants and Defendants' actions were typical of their routine functions, there is no basis on which a reasonable fact finder could determine that any of the actions taken by Defendants constituted a wrongful act.

Based on the undisputed facts, no evidence exists to prove that Defendants exhibited any degree of negligence, much less "an utter disregard of prudence amounting to complete neglect for the safety of another." *See McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994). Defendants clearly were not grossly negligent in classifying Plaintiffs or their assailants or in making the room assignments in question. As a consequence, the Court GRANTS Defendants' Motion for Summary Judgment on this gross negligence claim.

---

[4] Roe #2 stood 5'4" tall and weighed 120 pounds.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
February 20, 2009